UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Louis Ray Gilbeau, Jr.,

    Plaintiff,

    v.                                        Civil Action No. 1:11-CV-232

Andrew Pallito, Steve Gold,
James Studebaker,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 8 and 14)

Plaintiff Louis Ray Gilbeau, Jr., a Vermont inmate proceeding *pro se*, brings this action claiming that Defendants Andrew Pallito, Steve Gold, and James Studebaker failed to protect him from harm while he was incarcerated in a Vermont Department of Corrections ("DOC") prison facility. Pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Doc. 8.) Gilbeau opposes the motion to dismiss, and moves the Court to order his immediate release because he feels unsafe in his current facility. (Doc. 14.) For the reasons set forth below, I recommend that the motion to dismiss be GRANTED, that Gilbeau's motion for immediate release be DENIED, and that the Court grant leave to amend the Complaint.

## Background

For purposes of the pending motion to dismiss, the facts alleged in the Complaint will be accepted as true. The Complaint alleges that on March 17, 2005, Defendant

James Studebaker, a Shift Supervisor at Vermont's Southern State Correctional Facility ("SSCF"), allowed two inmates to enter Gilbeau's cell. Gilbeau was then sexually assaulted by those same inmates. He reports that he now "ha[s] nightmares about this physical assault, and being rape[d] at this facility." He also alleges that the assault brought back memories of sexual abuse he suffered as a child, and that he currently requires medication in order to fall asleep. (Doc. 4 at 6.)

Gilbeau claims to have reported the assault to prison personnel ("Lisa Johnsone" and "Jim Kamell"), and that those officials placed him in protective custody. However, SSCF Superintendent Ellen McWard allegedly ordered that he be returned to general population. Gilbeau further claims that "these same inmates" assaulted him a second time, and that, presumably after Gilbeau left SSCF, the DOC transferred one of the assailants to the same facility where he was being held. (*Id.* at 6-7.)

Gilbeau asserts that the DOC has a confidential informant's report of the initial sexual assault, as well as video of the inmates entering his cell. He has asked unnamed DOC officials for all evidence relating to the assault, but has been reportedly been told that he cannot obtain the evidence without a court order. Gilbeau accuses prison personnel of trying to "sweep this up" and "hide [that] this ever happen[ed]," and the Complaint asks the Court to order release of the video. (*Id.* at 4, 10.)

As to his causes of action, Gilbeau's primary claim is that Defendants failed to protect him from harm. The Court should construe this claim as falling under the Eighth Amendment, which requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d

2

614, 620 (2d Cir. 1996). More specifically, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted).

Gilbeau also alleges that he did not receive adequate medical care after the initial sexual assault. He makes reference to a previous lawsuit, notes that the State did not call a medical expert to testify about his care, and suggests that the State may have been "hiding" something "from the honorable court." (Doc. 4 at 8.) Gilbeau does not specifically connect his medical care claim to any of the three named Defendants.

As an "Extra Cause of Action," Gilbeau claims that on May 1, 2009, a state court subpoena was allegedly issued to an individual named Peter Potanas. Potanas's relationship to Gilbeau's assault claims is unclear. Gilbeau alleges that Potanas refused the subpoena, was deemed to be in contempt by a state court deputy clerk, and has thus violated Gilbeau's constitutional rights. (*Id.* at 11.)

For relief, Gilbeau seeks compensatory and punitive damages. He also asks the Court to order his immediate release "due to being physically and sexually assaulted (raped) while in the custody of the Vermont Department of Corrections." (*Id.* at 12.) A recent motion reiterates his request for immediate release, and informs the Court that he is being housed in the same prison facility as one of his alleged assailants. Although the assailant is in closed custody, and Gilbeau is in general population, Gilbeau fears that "his safety may be in je[o]pardy due to retaliation from [the assailant's] friends." (Doc. 14 at 2.)

Defendants have moved to dismiss the Complaint, arguing (1) official capacity immunity; (2) failure to allege the personal involvement of DOC Commissioner Pallito and former Commissioner Gold; (3) failure to exhaust the prison grievance process; and (4) that the Complaint was not filed within the applicable statute of limitations. (Doc. 8.) Gilbeau opposes the motion to dismiss, arguing that he has sufficient proof of his claims, and that his efforts at filing a grievance were unsuccessful. (Doc. 13.) He does not address the question of timeliness.

## Standard of Review

Defendants submit their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) allows for dismissal when the court lacks subject matter jurisdiction. "A complaint is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In considering a motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material factual allegations in the complaint. However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l*, 968 F.2d 196, 198 (2d Cir. 1992) (citations omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Twombly*, 550 U.S. at 555, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint states a plausible claim when the non-conclusory facts that a plaintiff alleges allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating Gilbeau's pleadings, the court recognizes that it is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nonetheless, *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see also Bowman v. Waterside Plaza*, 2010 WL 2873051, at *4 (S.D.N.Y. July 21, 2010) ("the 'plausibility' standard articulated in *Twombly* and *Iqbal* applies to the pleadings of *pro se* plaintiffs.").

## Discussion

**I.     Eleventh Amendment Immunity**

Defendants first argue for dismissal of all claims brought against them in their official capacities, claiming that to the extent they have been sued in such capacities, they are immune under the Eleventh Amendment to the United States Constitution. It has long been held that the Eleventh Amendment bars suits in federal court for damages

against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997))). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Relevant to this case, Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Moreover, the Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Accordingly, the damages claims brought against Defendants in their official capacities should be DISMISSED.

## II. Personal Involvement

Defendants next argue that the claims against Commissioner Pallito and former Commissioner Gold should be dismissed because Gilbeau does not allege their personal involvement in the alleged wrongdoing. Indeed, Pallito and Gold are only referenced in the Complaint caption, and in the section entitled "Parties." They are not mentioned in

6

the text of the Complaint, although Gilbeau does make general reference to the Department of Corrections' duty to protect inmates from harm. (Doc. 4 at 6.)

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, Gilbeau is presumably suing the Commissioner and former Commissioner because of their respective roles as supervisors. However, his claims must still show some level of personal responsibility, as "supervisor liability in a § 1983 action . . . cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Furthermore, mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*, 21 F.3d at 501 (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

A supervisor may be held liable for unconstitutional conduct only in certain limited circumstances. Specifically, the Second Circuit has held that

> [t]he liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Gilbeau does not claim that Pallito and Gold were either directly involved in, or even aware of, his claims. He alleges that he tried to file a grievance regarding the first assault, but does not claim that either Commissioner received his grievance or was aware of his attempted filing. Nor does Gilbeau allege that these Defendants helped create a policy or custom that sanctioned the allegedly deficient level of protection. There is no claim of grossly negligent supervision, and no suggestion that these Defendants failed to take corrective action based on information provided them.

Instead, Gilbeau offers only general allegations of the DOC's duty to protect inmates from harm. Such allegations do not state a plausible claim of individual capacity liability. *See, e.g., Wright*, 21 F.3d at 501; *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (claim that prison superintendent had general responsibility over inmate "care, custody and safety" was insufficient for § 1983 liability). I therefore recommend that the Court GRANT the motion to dismiss Defendants Pallito and Gold on the basis of Gilbeau's failure to allege their personal involvement in unconstitutional conduct.

## III. Administrative Exhaustion

Defendants next contend that the Complaint should be dismissed because Gilbeau failed to exhaust his administrative remedies. Gilbeau alleges in his Complaint that he filed a grievance in 2005, but was told that a claim of failure to protect was "not a grievable issue." (Doc. 4 at 2.)

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail,

8

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004). First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and defendants are not estopped from raising the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, there is no dispute that the Vermont DOC has a grievance process and that the process was available to Gilbeau. However, accepting the allegations in the Complaint as true, Gilbeau was told by someone within the DOC that his specific issue could not be grieved. Courts in this circuit have held that an inmate's reasonable belief that an issue is not grievable, based upon information provided by his jailers, is a "special circumstance" that justifies the prisoner's failure to exhaust the administrative process. *See Giano v. Goord*, 380 F.3d 670, 678-79 (2d Cir. 2004); *Peterson v. Johnson*, 2011 WL 7640124, at *8 n.16 (N.D.N.Y. Aug. 3, 2011); *Hill v. Donoghue*, 2010 WL 3924858, at *2 (E.D.N.Y. Sept. 30, 2010). Courts have also concluded that a claim is functionally exhausted when, as here, an inmate is told that his issue is not grievable. *See, e.g., Ziemba v. Armstrong*, 343 F. Supp. 2d 173, 180 (D. Conn. 2004), *rev'd in part*, 430 F.3d 623 (2d Cir. 2005); *Kearsey v. Williams*, 2004 WL 2093548, at *4 (S.D.N.Y. Sept. 20, 2004).

While *Hemphill* directs district courts to ask whether a defendant misled the plaintiff, courts have subsequently held that Second Circuit "does not require a showing that [a named defendant] is personally responsible for plaintiff's failure to complete exhaustion, as long as someone employed by [the DOC] is." *Brown v. Koenigsmann*, 2005 WL 1925649, at *2 (S.D.N.Y. Aug. 10, 2005); *see also Warren v. Purcell*, 2004 WL 1970642, at *6 (S.D.N.Y. Sept. 3, 2004). In this case, someone within the DOC allegedly informed Gilbeau that his issue could not be grieved. Under the law of this circuit, an inmate's failure to exhaust in these circumstances is justified, and his claims

should not be dismissed on this basis. *See Giano*, 380 F.3d at 678-79; *Ziemba*, 343 F. Supp. 2d at 180.

## IV. Timeliness

Defendants next argue that Gilbeau's claims are untimely. With regard to timeliness, the Complaint provides only one relevant date: March 17, 2005, the date of the initial sexual assault. Gilbeau makes reference to a second assault, (Doc. 4 at 6), but does not allege when that assault occurred. He filed his Complaint in September 2011.

The limitations period for Section 1983 actions in the District of Vermont is three years. *See Owens v. Okure*, 488 U.S. 235, 249-51 (1989) (holding that the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); 12 V.S.A. § 512(4) (establishing three-year limitations period for personal injury actions); *Brown v. City of Barre*, 2010 WL 5141783, at *4 n.2 (D. Vt. Dec. 13, 2010). This Court has acknowledged, however, that a tolling provision applies to state inmates. *See Bain v. Cotton*, 2009 WL 1660051, at *4 (D. Vt. June 12, 2009). Specifically, Vermont's limitations statute provides that "[w]hen a person entitled to bring an action specified in this chapter is a minor, insane or imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed." 12 V.S.A. § 551(a).

Defendants concede that § 551 applies, but argue that the tolling period ceased when Gilbeau was released from prison. Defendants report that Gilbeau was released to community supervision on November 14, 2005, escaped from community supervision on

11

January 29, 2006, and was returned to prison on March 23, 2006. They also inform the Court that he completed his maximum sentence on December 18, 2006. His current incarceration is reportedly the result of subsequent charges.

In support of these assertions, Defendants have filed a computer printout of Gilbeau's movement history within the Department of Corrections. (Doc. 8-1.) Before the Court incorporates this evidence into its analysis, it should first determine whether the printout may be considered in the context of a motion to dismiss.

The statute of limitations defense is an affirmative defense. *See Ghartey v. St. Johns' Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). As such, it is not jurisdictional, and is analyzed under the Rule 12(b)(6) standard for failure to state a claim. *Id.*; *Calemine v. Gesell*, 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007); *Garner v. DII Indus., LLC*, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) ("A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)."). When ruling on a Rule 12(b)(6) motion, a court generally may consider only the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). A court may also consider matters of which judicial notice may be taken. *See, e.g., Kramer*, 937 F.2d at 774; *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).

Federal Rule of Evidence 201(b) provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A printout of an inmate's movement history has been held to qualify as a public document that is eligible for judicial notice. *See Becker v. Cowan*, 2008 WL 802933, at *5-*6 (S.D. Cal. Mar. 21, 2008); *see also Davis v. Darnell*, 2011 WL 6887730, at *1 n.2 (N.D. Fla. Sept. 29, 2011) (taking judicial notice of Department of Corrections public records documenting plaintiff's incarceration history); *Allah El v. Warden of Rikers Island*, 2006 WL 5230021, at *1 (E.D.N.Y. Jan. 11, 2006) (same). Furthermore, it appears that Gilbeau intended to attach the movement log to his Complaint, that the log is part of a state court record, and that he relies on the log to demonstrate that he was moved from SSCF immediately after the alleged assault. (Doc. 4 at 10) ("See [a]ttached exhibit A which is DOC's movement log from one facility to another, [d]ated and received 'Dec. 2, 2009 at the Windsor County Clerk's offices.'"); *see also Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004) (when reviewing motion to dismiss, court may take judicial notice of state court public records). Finally, Gilbeau has not made any effort to dispute the accuracy of the DOC's factual assertions with respect to his incarceration dates. The Court may therefore consider Defendants' documentation.

Turning to the merits of Defendants' argument, the Vermont Supreme Court has not determined whether tolling under § 551 terminates when an inmate is released to community supervision. Nor has it determined the impact of release and re-incarceration. Defendants argue that, in the event of re-incarceration on a new conviction,

recommencing the tolling period would improperly reward defendants for having committed new crimes. (Doc. 8 at 9.)

Analyzing similar statutes, other courts have held that when a prisoner is freed from confinement, "regardless of whether it is by an illegal means or by a legitimate means, the statute of limitations begins to run and it is not tolled by any subsequent imprisonment." *Burrell v. Newsome*, 883 F.2d 416, 420 (5th Cir. 1989); *Boag v. Chief of Police, City of Portland*, 669 F.2d 587, 589 (9th Cir. 1982) (disability of imprisonment "ceased" when inmate was released on parole for forty-seven days). Moreover, there is considerable precedent, including Second Circuit law, to support Defendants' contention that a subsequent incarceration on a new charge will not cause the tolling period to recommence. *See Kaiser v. Cahn*, 510 F.2d 282, 286 (2d Cir. 1974) ("Once the prisoner is released, the benefit of the tolling statute is lost forever. A later incarceration will not retoll the statute."); *see also Lewis v. Shuck*, 623 P.2d 520, 522 (Kan. 1981) (collecting cases) ("[T]he overwhelming general rule recognized under similar statutes in other jurisdictions is that a succession of disabilities cannot be tacked upon the first so as to prevent the operation of the statute of limitations."). This Court should therefore find that Gilbeau's three-year limitations period commenced, at the latest, in December 2006 when he completed his maximum sentence. Thus, without any other sort of tolling, his 2011 Complaint filing was untimely.

In the absence of a statutory tolling provision, the doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432,

436 (2d Cir. 2003) (citation omitted). Typically, a statute of limitations is equitably tolled when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl v. City of Long Beach*, 296 F.3d 76, 82-83 (2d Cir. 2002). Here, Gilbeau does not argue for equitable tolling, and has not alleged any basis for equitable tolling to apply. I therefore recommend that his claims be DISMISSED as time-barred.

## V. Motion for Immediate Release

Gilbeau has moved the Court to order his immediate release to furlough status because he feels unsafe in prison. He claims that one of the two inmates who allegedly assaulted him on March 17, 2005 is being housed at his current facility, and that although the other inmate is in a different unit, Gilbeau is afraid of retaliation from the inmate's friends. (Doc. 14 at 1-2.) That motion is now before the Court.

Gilbeau's motion asks the Court to issue an order directing the DOC to take certain action, and should thus be construed as a motion for preliminary injunctive relief. A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). To warrant the issuance of a preliminary injunction, a movant must generally show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (quotation omitted). If a party seeks a mandatory injunction, *i.e.*, an injunction

15

that directs the defendant to perform a positive act, he must meet a higher standard. "[I]n addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D.*, 465 F.3d at 510 (citing *Jolly v. Howard*, 76 F.3d 468, 473 (2d Cir. 1996)).

In this case, Gilbeau cannot show a likelihood of success on his underlying claims because those claims, as currently pled, are untimely. *See McFarlan v. Coughlin*, 1998 WL 185571, at *11 (N.D.N.Y. Apr. 15, 1998). Furthermore, it is not clear that Defendants are *currently* denying Gilbeau the "reasonable safety" mandated by the Eighth Amendment, as his claim of potential harm at the hands of another inmate's friends is highly speculative. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989) (emphasis added). A speculative claim is also insufficient to establish irreparable harm. *See Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) ("To demonstrate irreparable harm, a plaintiff must show that an injury is not remote or speculative, but actual and imminent, and that monetary damages will not suffice as a remedy."). Gilbeau's motion for injunctive relief (Doc. 14) should therefore be DENIED.

## VI. Leave To Amend

The Second Circuit has determined that a *pro se* complaint should not be dismissed without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citing *Gomez v. USAA Federal Sav. Bank*, 171

F.3d 794, 795 (2d Cir. 1999)).  The Complaint in this case does not allege sufficient personal involvement by Defendants Pallito and Gold, and does not establish that any claims have been filed within three years of their accrual.  Gilbeau also asserts a medical care claim, and a claim regarding a state court subpoena, with no explanation as to how these claims pertain to the three Defendants.  Better pleading may cure some or all of these deficiencies.

I therefore recommend that the Court grant Gilbeau thirty days to amend his Complaint.  If Gilbeau chooses to submit an amended pleading, the pleading shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects.  If Gilbeau fails or declines to file an Amended Complaint within the thirty-day period, this case should be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that Defendants' motion to dismiss (Doc. 8) be GRANTED, and that Gilbeau's motion for immediate release (Doc. 14) be DENIED.  I further recommend that, if this Report and Recommendation is adopted by the Court, Gilbeau be allowed thirty days to file an Amended Complaint.  If Gilbeau fails or declines to file an Amended Complaint, this case should be DISMISSED.

Dated at Burlington, in the District of Vermont, this 22nd day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).